UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/15/2021__
```

TYRONE FARMER,

                              Plaintiff,

      -against-

THE COUNTY OF WESTCHESTER, *et al.*,

                              Defendants.

No. 18-cv-2691 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

　　Plaintiff Tyrone Farmer ("Plaintiff"), proceeding *pro se*, commenced this action, pursuant to 42 U.S.C. § 1983 ("Section 1983"), by the filing of his Complaint on March 27, 2018. (Complaint ("Compl.") (ECF No. 2).)  Plaintiff subsequently filed an Amended Complaint on July 9, 2020.  (*See* Amended Complaint ("Am. Compl.") (ECF No. 32).)  Collectively,[1] the Complaint and Amended Complaint assert Section 1983 claims arising out of the allegedly unlawful search of Plaintiff's cell phone by the Peekskill Police Department against Defendants County of Westchester ("Westchester County"), City of Peekskill, Chief of Police Eric Johansen, Officer Sean Echols, Officer Pamela Srgoi, Segreant Henderlong, and Officer Vazeo (collectively "Defendants").  Presently before the Court is the motion of Westchester County to dismiss the Complaint and Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).  (ECF No. 90.)  For the following reasons, Westchester County's motion is GRANTED, and Plaintiff's

---

[1] Pursuant to the Court's Order of Service dated April 16, 2019, the Court consolidated Plaintiff's original complaint and amended complaint and directed the parties to treat it collectively as the operative complaint.  (ECF No. 34 at 2.)

Complaint and Amended Complaint are dismissed *without prejudice* as against Westchester County.

## BACKGROUND

### I.    Factual Allegations

The following facts are derived from the Complaint and Amended Complaint or matters of which the Court may take judicial notice, are taken as true, and construed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff's Complaint and Amended Complaint, which the Court has considered as consolidated for the purposes of pleading, are deeply disorganized—embracing an organizational style akin to James Joyce's "Finnegan's Wake" rather than the chronological or thematic styles customarily employed by authors of legal complaints—and verbose (collectively amounting to 87 pages including exhibits, 134 numbered paragraphs, and additional pages of unnumbered allegations).  To streamline the operative allegations for the purposes of resolving the instant motion, the Court summarizes the events giving rise to this matter and then summarizes allegations against the moving defendant Westchester County.

### A.    Conduct Giving Rise to The Action

Plaintiff is a post-conviction detainee currently located in Shawangunk Correctional Facility.  (Am. Comp. at 4[2].)  On March 23, 2012, police officers from the Peekskill Police Department arrested Plaintiff in connection with a burglary and confiscated his cell phone.

---

[2] Plaintiff's Amended Complaint possesses unusual numbering conventions that cannot be easily cited.  Rather than follow the numbers on the bottom of the page or top of the page, which are inconsistent and inaccurate, the Court refers to the actual order in which the page appears – i.e., the fourth page refers to the fourth page in the submitted document even though it states "Page 12 of 16" at the top of the page and "Page 2" at the bottom of the same page.

(Compl. ¶ 85-87; Am. Compl. at 15.)  When Plaintiff was taken into the police station (likely also on March 23, 2012), he was advised that he was not under arrest, was given a *Miranda* warning, and was subsequently interrogated in or around 10:30 a.m.  (Am. Compl. at 12.)  Around 11:18 a.m., Sergeant Henderlong took Mr. Farmer's cell phone, told him (falsely) that people were not allowed to have cell phones in the room, and left the room.  (Am. Comp. at 12.)  Despite the absence of a warrant or Plaintiff's consent, officers from Peekskill Police Department "vouchered" Plaintiff's cell phone and placed it in the "[p]roperty room" or the "[e]vidence room."  (Compl. ¶ 73.)   Sometime afterwards, defendants Sergeant Henderlong and Officer Vazeo removed Plaintiff's cell phone from the Peekskill Police Department evidence room and searched it without a warrant.  (Compl. ¶ 67.)  Plaintiff asserts that the phone was "illegally taken out of . . . [the] Property Room/Evidence Room without proper log book entry noting what John or Jane Doe took Plaintiff[']s personal cell phone . . . and not return the [ ] cell phone."  (Compl. ¶ 90.)  He also asserts that Sergeant Henderlong and Officer Vazeo "at no time notif[ied] the Westchester County District Attorney's Office of the need for a warrant . . . to retrieve digital data from [his] . . . phone."  (Compl. ¶ 93.)

Plaintiff repeatedly asserts that his cell phone contained exculpatory material, that the seizure and failure to return his phone by the Peekskill Police Department constitutes the "spoliation of exculpatory evidence that would . . . have exonerated [him]," and that all of this was a denial of his constitutional rights.  (Compl. ¶ 92; *see also* Am. Compl. at 9.)  The sequence events are somewhat unclear, but it appears that: (1) Plaintiff's phone was seized during his arrest; (2) he sought to suppress contents of his phone during trial; (3) he ultimately entered a guilty plea in the underlying criminal case and orally waived his right to appeal (though he claims the waiver was insufficient given the terse explanation offered by the state court); and (4) he was unable to recover

3

his cell phone after pleading guilty.  (Am. Compl. at 14.)  To the extent that Plaintiff's cell phone was only lost *after* the trial, as another court concluded, and Plaintiff sought to suppress his cell phone at trial, then his claim that he was denied access to exculpatory evidence due to the loss of his cell phone is somewhat in tension with the order in which events transpired.

Between August 19, 2013 and January 14, 2015, while incarcerated, Plaintiff sent four letters to the Peekskill Police Department requesting the return of his cell phone.  (Compl. at Exs. A-D.)  By letter dated January 21, 2015, Sergeant Echols of the Peekskill Police Department advised Plaintiff that "[i]n order to retrieve the cell phone you will need to first contact the Westchester County District Attorney and receive a formal release."   (Compl. at Ex. E.) Subsequently, by letter dated February 17, 2015, Westchester County Assistant District Attorney Raffaelina Gianfrancesco advised Plaintiff that the Westchester County District Attorney's Office "does not need the Peekskill Police Department to retain the cell phone as evidence in" his case and instructed him to "contact Sean Echols . . . to make an appointment to claim your property." (Compl. at Ex. F.)  In a letter dated February 22, 2015, Plaintiff provided this release to Sergeant Echols.  (Compl. at Ex. G.)

Despite the release, Plaintiff was not able to obtain his phone and initiated an Article 78 proceeding in or around September 8, 2016 seeking an order directing the Peekskill Police Department to reimburse him "for confiscation of his cellular telephone."  (Compl. at Ex. O.) Subsequently, by letter dated January 12, 2017, the Corporation Counsel for the City of Peekskill advised Plaintiff that "the City of Peekskill Police Department has been unable to locate the cell phone Mr. Farmer is requesting be returned" and that "the City is willing to offer Mr. Farmer $200 for the replacement of his cell phone."  (Compl. at Ex. P.)  On March 23, 2013, Plaintiff released the Peekskill Police Department from any further causes of action, including his Article 78

4

proceeding, with regard to the confiscation of his cell phone in exchange for $290.95.  (Compl. at Ex. S.)

Notwithstanding the above, on May 18, 2017, Plaintiff signed a confusing Notice of Claim identifying "[t]he County of (Westchester)" as the defendant, but describing the action as a "claim and demand against the City of Peekskill, New York" and exclusively referring to conduct by "the City of Peekskill" and the "Peekskill Police Department" in connection with the confiscation of his phone. (Compl. at Ex. U.)  The Notice of Claim attached to the Complaint only indicates service upon the Comptroller of the City of Peekskill, New York.  (*See id.*)  There is no allegation that Plaintiff properly served the Notice of Claim upon Westchester County.

In a letter dated July 27, 2016, Plaintiff informed Echols that he "started a F.O.I.L. [Freedom of Information Law] request" regarding his correspondence with the City of Peekskill Police Department in which he requested the return of his cell phone, and claimed that the City of Peekskill engaged in "deceptive deceit in responding to [his] FOIL Request . . . [by not] actually acknowledging the FOIL request by proper procedure." (Compl. at Ex. H.)  He claims in the letter that Defendant "J. Doe Records Access Officer in fraud has allowed Police Officer Pamela [Defendant] Sgroi to actually respond in place of the actual J. Doe Records Access Officer."  (*Id.*)

## B.    Allegations Against Westchester County

The instant motion was brought by Defendant Westchester County and exclusively concerns whether claims have been plausibly pleaded as against that defendant, so the Court highlights certain relevant allegations.

As a general matter, Plaintiff asserts three types of allegations against Westchester County including that: (1) Westchester County bore supervisory responsibility for the other Defendants, (2) Westchester County conspired with the other Defendants to violate Plaintiff's civil rights, and

(3) relatedly, the acts of individual officers of the Peekskill Police Department are attributed to multiple parties including Westchester County without stating what Westchester County did.  For example, Plaintiff alleges that "Defendant County of Westchester at all times relevant to this action, was legally responsible for the legally and overall operation of the County of Westchester, and the Chief Executive Officer, and is legally responsible for the proper supervision, and proper training of its employee's, servants, and agents, is sued in its individual capacity." (Compl. ¶ 51.) Plaintiff also alleges that "County of Westchester" along with other Defendants "committed a civil conspiracy in combination of two or more persons acting in concert or a meeting of the minds to commit an unlawful act by unlawful means, where they agreed to inflict injury upon Plaintiff Tyrone Farmer, and where there was an overt act resulting damage." (Compl. ¶ 63.)  Plaintiff further alleges that "County of Westchester" along with "City of Peekskill, Peekskill Police Department, Chief of Police Eric Johansen and Sean A. Echols, failed to properly train and properly supervise [Sergeant]  Henderlong and officer Vazero in not searching cell phones in the Peekskill Police Department's custody without a valid warrant or the destruction of any cell phone by gross negligence or deliberate indifference." (Compl. ¶ 68.)

Relatedly, Plaintiff avers that Westchester County is vicariously liable for the conduct of the City of Peekskill's Police Chief Johnansen.  For example, he asserts that "Defendant City of Peekskill, or Defendant County of Westchester delegated policy of custom/usage – policy making authority to defendant Police Chief Johansen that renders the defendant's City of Peekskill and County of Westchester legally liable to or in this matter by their gross negligence with deliberate indifference towards the Plaintiff and his legal rights." (Compl. ¶ 71.)

Though the Court has read the Complaint and Amended Complaint liberally to ascertain the strongest allegations contained therein, and highlighted them above, it is worth noting that

many of the allegations against Westchester County are steeped in legalese and are indiscernible. For example, Plaintiff asserts that "Defendant City of Peekskill, and the Defendant Westchester County, itself has not acted, plaintiff claims the official policy or custom/usage, [re]medial action, administrative action, nor disciplinary action defendant's had 'ACTUAL AND CONSTRUCTIVE NOTICE' Res Ipsa Loquitur, through their subordinates deliberate indifference with a gross negligence towards the Plaintiffs' Article 78 Proceeding and Notice of Claim."  (Compl. ¶ 70.) Many similar allegations are repeated throughout the Complaint.

### C.      Plaintiff's Habeas Corpus Proceeding

Besides the instant action, Plaintiff has sought several appeals of his conviction in State Court and brought a habeas corpus petition pursuant to 28 U.S.C. § 2254, currently pending before Judge Philip M. Halpern at Case No. 17-cv-1091 (the "Habeas Case").  In the Habeas Case, Plaintiff challenges his conviction on several grounds including that his purloined cell phone contained exculpatory evidence.

The underlying Judgement challenged in the Habeas Case was his guilty plea in the New York Supreme Court, Westchester County, to second degree burglary, fourth-degree criminal mischief, two counts of fifth-degree criminal possession of stolen property, and petit larceny. Before he pleaded guilty, he attempted to suppress statements he had made and evidence police had collected as a result of officers' searching the contents of his cell phone, arguing that they violated his Fourth Amendment rights.  (Habeas Case, ECF No. 22-4.)  The trial court denied his motion, Plaintiff pleaded guilty, and the trial court sentenced him to ten years' incarceration. Plaintiff, appealed his conviction through counsel but did not raise any grounds related to the search of his cell phone.  (Habeas Case, ECF No. 22-5.)  The Appellate Division affirmed his conviction.  *See People v. Farmer*, 123 A.D.3d 735 (2d Dep't 2014) (affirmed on ground that

waiver of right to appeal was valid), *leave denied*, 26 N.Y.3d 967 (Sept. 15, 2015), *recon. Denied*, (Feb. 23, 2016).  In a related appeal that was summarily rejected, Plaintiff argued that his plea was involuntary and that his sentence was excessive, citing his age and an unspecified disability. *People v. Farmer*, 26 N.Y.3d 1144 (2016).

On August 30, 2021, Magistrate Judge Paul E. Davison issued a Report and Recommendation in the Habeas Case recommending that Judge Halpern deny Plaintiff's petition for a Writ of Habeas Corpus on several grounds including that the loss of Plaintiff's cell phone occurred years after Plaintiff's conviction and has no bearing on his prosecution, plea, or sentencing.  (Habeas Case, ECF No. 55 at 36.)  Separately, Judge Davison recommends denying Plaintiff's petition on the grounds that "Plaintiff cannot rely on the fact that the phone has since been lost because the record is clear as to what the cell phone contained, based on [Plaintiff's] motion to suppress and the transcript of the suppression hearing.  Based on the record, the cell phone contained evidence that "Mikey [*i.e.*, a person that Plaintiff alleges actually committed the underlying burglary for which he pled guilty] was fabricated and [Plaintiff] merely pretended to call him.  As such, the cell phone contained inculpatory, not exculpatory, evidence, and [Plaintiff] was prudent to suppress this evidence through counsel [in advance of his criminal trial]."  (Habeas Case, ECF No. 55 at 26.)  As of the date of this opinion, Judge Halpern has not adopted Judge Davison's Report and Recommendation.

## II.    Procedural History

Plaintiff filed his Complaint in this case pro se on March 27, 2018.  (*See* Compl.)  He later filed his first pro se notice of appearance on August 28, 2018.  (ECF No. 28.)  Subsequently, the Court issued an Order to Amend advising that the Court interpreted the Complaint as asserting a Fourth Amendment claim for damages arising from the allegedly unlawful search of his cell phone and advising that the Court was inclined to dismiss that claim "because Plaintiff does not assert

that the search was unlawful or that he suffered any harm from that search, except for his conviction" which is not cognizable under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* ECF No. 31 at 6.) Accordingly, the Court afforded Plaintiff an opportunity to amend his Complaint to assert facts indicating that the search was unlawful and that he suffered a harm separate and district from his conviction as a result of the search of his cell phone. (*Id.* at 8.) The Court also dismissed any claim that Defendants' withholding of exculpatory evidence denied Plaintiff the right to access the courts under *Brady v. Maryland*, 373 U.S. 83 (1963) as the success of that claim would necessarily imply the invalidity of his conviction and is thus barred under *Heck*. (*Id.*) The Court noted that failure to amend the complaint would result in dismissal of his claims for failure to state a claim upon which relief may be granted. (*Id.* at 9.) Plaintiff subsequently filed an Amended Complaint on October 26, 2018. (*See* Am. Compl.)

The Court issued an Order of Service on April 16, 2019 in which it dismissed claims against the City of Peekskill Police Department on the grounds that city agencies or departments do not have the capacity to be sued under New York Law, replaced as a defendant City of Peekskill Police Department with the City of Peekskill, consolidated Plaintiff's Complaint and Amended Complaint to be treated collectively as the operative complaint, and ordered service upon the remaining Defendants. (ECF No. 34.) In accordance with that Order, a summons was issued as to Westchester County on April 17, 2019.

Separately, in the Order of Service, the Court directed the City of Peekskill Police Department to identify each Doe defendant whom Plaintiff seeks to sue. (ECF No. 34.) The process of identifying the Doe Defendants set off a series of motions filed by Plaintiff.

First, on July 25, 2019, Plaintiff filed a motion for sanctions arguing that Defendants failed to comply with the Court's order of service. (ECF No. 49.) On August 1, 2019, this motion was

denied and the Court ordered Defendants including Westchester County to identify the badge number for each Doe Defendant named in the Amended Complaint.  (ECF No. 55.)  Shortly afterwards, Westchester County denied exercising any control over the City of Peekskill or its employees.  (ECF No. 56.)

Second, by letter dated August 5, 2019, Plaintiff complained, *inter alia*, that Defendants failed to comply with the Court's orders and that sanctions were warranted.  (ECF No. 58.) Plaintiff then filed a second motion for sanctions due to Defendants' failure to comply with the Valentin Order and the August 1, 2019 order.  (ECF No. 60.)  On May 31, 2020, the Court held that "the Defendant County of Westchester fully complied with the Court's August 1, 2019 order and denied Plaintiff's requests for sanctions on the grounds that there was "clearly no misconduct warranting sanctions on [Westchester's] part."  (ECF No. 76 at 3.)

Third, on December 10, 2019, Plaintiff filed a motion for an order scheduling this matter for trial, striking any opposition from Defendants, and granting a default or summary judgment against Defendants.  (ECF No. 68.)  In the same motion, Plaintiff also sought evidentiary rulings from the Court including an adverse inference instruction due to the alleged destruction of his cell phone.  The Court denied each requested relief and found that: (1) Plaintiff's request for a trial was premature considering that no discovery had taken place; (2) Plaintiff's request for an entry of summary judgment was also premature in light of the absence of any discovery; and (3) Plaintiff's request for entry of a default judgment was not merited considering that City of Peekskill offered a reasonable excuse for any default.  (ECF No. 76 at 3-4.) Separately, the Court granted all Defendants, including Westchester County, leave to file their motions to dismiss according to the Court-ordered briefing schedule.

Though the other Defendants did not comply with that order, and instead filed an Answer to the Complaint, Westchester County served its motion (ECF No. 90) and memorandum in support of its motion to dismiss ("Def's Mem.") (ECF No. 92) on July 6, 2020.  Plaintiff served his excessively long opposition papers, which did not conform to this Court's local rules due to unauthorized length (*see* Memorandum in Opposition to Motion to Dismiss ("Pl's Opp.") (ECF No. 96)) on August 20, 2020.  Westchester County thereafter served and filed its reply papers in further support of its motion to dismiss on September 4, 2020.  ("Def's Reply" (ECF No. 97).)  Finally, Plaintiff submitted an unauthorized memorandum of law in reply to Defendant's reply memorandum of law on September 17, 2020 (ECF No. 100) and the Westchester County requested that the Court disregard Plaintiff's unauthorized sur-reply as filed without permission of the Court. The Court does not consider Plaintiff's unauthorized sur-reply considering his failure to first seek leave to file such a sur-reply.

## LEGAL STANDARD

### I.    Fed. R. Civ. P. 12(b)(6)

On a motion under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II.       42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

As this Court previously ruled, read liberally, Plaintiff is attempting to assert a Fourth Amendment claim against Defendants for damages, pursuant to Section 1983, arising out of the

allegedly unlawful search of Plaintiff's cell phone by the Peekskill Police Department. (ECF No. 31 at 6.) As discussed below, this claim fails as against Westchester County because: (1) Plaintiff's group pleadings against Westchester County fail to comply with Federal Rule of Civil Procedure 8(a), (2) Plaintiff fails to plausibly allege *Monell* liability, and (3) Plaintiff fails to offer non-conclusory allegations to support conspiracy liability as against Westchester County.

## I.   Rule 8(a) Group Pleading

Rule 8(a) of the Federal Rules of Civil Procedure "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001). Pleadings fail to meet that minimum requirement where allegations "lump[ ] all the defendants together in each claim and provide no factual basis to distinguish their conduct." *Id.*

In this case, the vast majority of allegations relating to the Westchester County are jointly alleged against most of the other Defendants without providing any factual basis to distinguish their conduct. For example, Plaintiff asserts "Plaintiff Tyrone Farmer, makes a claim against the County of Westchester, City of Peekskill, Peekskill Police Department, Eric Johansen (Chief of Police), Sean A. Echols (Administrative Officer), Pamela Sgroi (Property Officer), Jane or John Doe (Records Access Officer), [Sergeant] Henderlong and officer Vazeo . . . for the damage to larceny, theft, destruction of said, spoliation of exculpatory evidence, in their violation of plaintiffs' personal property rights, of every name and nature . . . because of misfeasance . . . on the part of the county, its officers, agents, servants or employee's." (Compl. ¶ 50.) Likewise, Plaintiff asserts that he is not aware of which entity was responsible for the acts giving rise to the litigation – *e.g.*, Plaintiff asserts that "Defendant City of Peekskill, **or** Defendant County of Westchester delegated policy of custom/usage – policy making authority to defendant Police Chief Johansen that renders the defendant's City of Peekskill and County of Westchester legally liable

to or in this matter by their gross negligence with deliberate indifference towards the Plaintiff and his legal rights." (Compl. ¶ 71 (emphasis added).)

Similarly, to the extent that claims against Westchester County are based on its supervision of its agents, it is entirely unclear *which* employees engaged in any of the conduct at issue in this litigation. For example, Plaintiff alleges that "Defendant County of Westchester . . . is legally responsible for the proper supervision, and proper training of its employee's servants, and agents[.]" (Compl. ¶ 51.) However, the only employee of Westchester County described in the Complaint is Assistant District Attorney Raffaelina Gianfrancesco, who is not named as a Defendant, and only appears to have interacted with Plaintiff in his attempt to seek return of his cell phone. (Compl. at Ex. F.) Putting aside that nothing Raffaelina Gianfrancesco did can be construed as giving rise to liability, her status as a county prosecutor does not give rise to liability as against the County. Due to the historical development of the function of prosecutors in the state of New York, a county-level prosecutor is considered to represent the state of New York rather than the county, and her conduct cannot form the basis of supervisory liability. *See Baez v. Hennessy*, 853 F. 2d 73, 77 (2d Cir. 1988); *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ("When prosecuting a criminal matter, a district attorney in New York, acting in a quasi-judicial capacity, represents the State not the county").

In sum, based on a review of the Complaint, Amended Complaint, and any attempts by Plaintiff to further supplement his pleadings through his opposition papers, Defendant Westchester County was not provided with fair notice as to what conduct it engaged in that gave rise to the claims against it. Accordingly, the Court GRANTS Defendant Westchester County's motion to dismiss with respect to all claims against Westchester County due to Plaintiff's failure to comply with Rule 8(a). The claims are dismissed without prejudice. Plaintiff may further amend his

complaint to provide Westchester County with sufficient notice as to the grounds upon which it has been named as a defendant to the extent that Plaintiff has a non-frivolous basis for suing Westchester County.

## II.   Municipal Liability of Westchester

Even if Plaintiff had adequately asserted allegations giving Defendant Westchester County adequate notice regarding the conduct that it distinctly engaged in that gave rise to this action, he still fails to plausibly allege that Westchester County is liable pursuant to *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

A municipality, or private actor engaged in governmental action, may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Monell*, 436 U.S. at 691. Therefore, under *Monell*, a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires a plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."). To plead an official custom or policy, a plaintiff must allege

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

15

amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester Cnty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Westchester County argues that, despite the great length of Plaintiff's pleadings, he has offered no plausible allegations supporting *Monell* liability on the basis of Westchester County's failure to train or policy or custom.  (Def's Mem. at 12.)  Plaintiff offers the conclusory response that "Plaintiff hold Westchester County, City of Peekskill, the municipal entity liable under Section 1983."  (Pl's Opp. at 22.)  As best as can be discerned, Plaintiff is asserting that Westchester County is liable under *Monell* for failure to train and for official policy.  To this end, he states, (1) "Plaintiff have reveal the failure by official policy-makers to properly train or supervise subordinates [regarding an unspecified area of training, policy, or conduct] to such an extent that it amounts to deliberate indifference" and (2) "Plaintiff further contend that the City of Peekskill of Westchester County, delegated policy of custom/usage – policy making authority to defendant Police Chief Johansen that renders the defendant's City of Peekskill and Westchester County legally liable to or in this matter by their gross negligence with deliberate indifference towards the plaintiff and his legal rights."  (Pl's Opp. at 22-23.)

*Failure to Train*:  Where municipal liability is based on a failure to train employees, the inadequate training must "reflect[] deliberate indifference to . . . constitutional rights."  *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).  To state a claim for deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will

frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).  Here, there are two deficiencies with Plaintiff's pleadings.

First, Plaintiff only offers conclusory allegations that Westchester County was involved in or responsible for training any employees engaged in conduct at issue in this litigation.  For example, he states "Defendant's Westchester County, City of Peekskill, Peekskill Police Department, Sean A. Echols, (Administrative Officer, Chief of Police Eric Johansen, failed to properly train the Defendant's J. Doe 'Records Access Officer for Freedom of Information Law requests, and P.O. Pamela Sgroli (The Property Room/Evidence) in which vouchered into this said area of the Peekskill Police Department, and further to failed to properly supervise their subordinates as to their job duties by deliberate indifference towards right of the Plaintiff[.]" (Compl. ¶ 131.)  Such conclusory allegations that Westchester County "failed to train and supervise its employees is insufficient to state a *Monell* claim."  *Davis v. City of New York*, No. 07 Civ. 1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008).

Second, Plaintiff does not identify any employees of Westchester County that were involved in the underlying events giving rise to this action, and accordingly, even if Plaintiff's allegations were not overly conclusory, he has failed to plausibly allege that Westchester County failed to train its *own* employees.  Instead, Plaintiff claims that Westchester County failed to train employees of the Peekskill Police Department.  For example, he states that "County of Westchester [along with the City of Peekskill and Peekskill Police Department and its supervisory officials] failed to properly train [Sergeant] Henderlong and officer Vazeo in not searching cell phones in the Peekskill Police Department's custody without a valid warrant or the destruction of any cell phone by gross negligence or deliberate indifference."  (Compl. ¶ 68.)  While the sentence is

unclear, nowhere in the Complaint does Plaintiff allege that either [Sergeant] Henderlong or Officer Vazeo were employed by Westchester County.  Instead, at other junctures in the Complaint, Plaintiff alleges that they are employed by the Peekskill Police Department.  (*See, e.g.*, Compl. ¶ 42 (attributing the loss of his phone to "the Peekskill Police departments Employee's intentional misconduct" including "theft of property while in Police Custody"); Compl. ¶ 50 (describing [Sergeant] Henderlong and Officer Vazeo as the last people "to have [] unauthorized access to Plaintiffs' Personal Cell Phone vouchered into Peekskill Police Departments seized Property Room/Evidence Room"); Compl. at Ex. E (Plaintiff informs Eric Johansen, Chief of the Peekskill Police Department, that his "Cell Phone was confiscated by **your** [Sergeant] Henderlong.") (emphasis added).)

While Plaintiff alleges that "Peekskill Police Department is an Agency/Department of the Defendant of Westchester under the Municipality Law 50-e," the Court is not required to accept this erroneous legal conclusion at the motion to dismiss stage.  There is no statute the Court has been able to identify called "Municipality Law 50-e."  If he is referencing N.Y. General Municipal Law § 50-e (as seems to be the case), that statute does not purport to define whether municipality level police departments are considered agencies of the county in which they are organized. Accordingly, as Plaintiff has not plausibly alleged that any agent or employee of Westchester County engaged in any of the conduct giving rise to this action, the Court concludes that he has not plausibly alleged that Westchester County failed to adequately train any of its agents or employees for the purposes of municipal liability.

*Unofficial Policy or Custom*:  If a plaintiff is premising *Monell* liability on an unofficial policy or custom, the practice, custom, or usage must be so widespread and so persistent that it has the force of law.  *Goode v. Westchester Cnty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3

18

(S.D.N.Y. May 24, 2019).  Here, Plaintiff makes numerous conclusory allegations that official policies exist that caused his injuries but fails to ever describe the contours or details of that policy. For example, "Plaintiff avers that the policy in which has been a standard course of action established by defendants' City of Peekskill, County of Westchester, Peekskill Police Department and police Chief Johansen knew this to become a condition for their liability and the causal relation as to the relationship in the policy, custom/usage in the deprivation of the plaintiff's rights to his personal property (Cell Phone), its deprivation by the theft, while vouchered into Defendant Peekskill Police department Property Room or Evidence Room, as to destruction, spoliation of exculpatory evidence in the Defendant Peekskill Police Departments custody and control violated Plaintiffs' 4th Amend., 5th Amend., and 14thth Amend. Due Process Clause, and Equal Protection Clause."  (Compl. ¶ 72.)

Notably absent from this lengthy allegation (and other similarly verbose allegations[3]) is a description of the actual policy that exists that caused the alleged constitutional violations.  But in order to adequately plead *Monell* liability pursuant to an official policy, Plaintiff must allege that the violation his constitutional rights resulted from a policy.  *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policy making level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy[ ]"); *Haynes v. Acquino*, No. 10-CV-0355S, 2011 WL 13210092, at *4 (W.D.N.Y. Apr. 6, 2011)

---

[3] For example, Plaintiff's allegation approaches metaphysics when he asserts that "the official policy in this matter as to local government (Defendant's Westchester County, City of Peekskill, Eric Johansen, Chief of police, and Peekskill Police Department, as well as Sean A. Echols, Administrative Officer) as a body makes a decision, when executed by the body itself or by its employee's, give rise to a constitutional violation by deliberate indifference, policy statements, ordinances. regulations, and similar decisions, as to subordinates acts by Sgroi, J. Doe 'Records Access Officer', [Sergeant] Henderlong and Officer Vazeo."  (Compl. ¶ 108.)

("Conclusory allegations of suppressing evidence and suborning perjury by its agents-presumably members of District Attorney's Office-do not sufficiently allege a Monell claim of a municipal policy or custom. In the absence of any non-conclusory allegations that the alleged acts of false arrest and malicious prosecution were done pursuant to a policy or custom of the County and/or City.").  Simply stating that policy exists and that it caused the violation of one's rights is insufficient to plausibly allege the existence of an official policy or custom.  *Barnett v. Westchester Cnty.*, No. 18-CV-2483 (NSR), 2020 WL 1032445, at *4 (S.D.N.Y. Feb. 28, 2020) ("The law is clear, however, that it is not enough to simply allege that a municipal policy or custom exists.").

Although Plaintiff fails to identify a particular policy or custom, he could, in theory premise *Monell* liability on an unofficial policy or custom if he alleged that the practice, custom, or usage was so widespread and so persistent that it has the force of law.  *See Goode*, 2019 WL 2250278, at *3.  However, Plaintiff only identifies a single instance in which the operative conduct occurred—*i.e.*, where a cell phone was confiscated and not returned—and a single incident is insufficient to establish an unofficial policy or custom.  *See Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State.").

In sum, Plaintiff has failed to adequately allege the existence of an official policy or its equivalent.  Defendant's motion to dismiss Plaintiff's claims against Defendants Westchester is granted and Plaintiff's claims against Westchester County are dismissed without prejudice. Because "Monell bar on respondeat superior liability under § 1983 applies regardless of the

category of relief sought" the Court is granting dismissal of all Section 1983 claims asserted against Westchester County, including Plaintiff's request for injunctive relief.  *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007).

**III.    Conspiracy Liability**

Similarly, Plaintiff's conclusory allegations concerning the existence of a conspiracy between Westchester County and the City of Peekskill is insufficient to survive a motion to dismiss.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal[.]"  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Notably, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  *Ali v. Ramos*, No. 16-CV-01994 (ALC), 2018 WL 1353210, at *6 (S.D.N.Y. Mar. 14, 2018); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (noting that a complaint must allege facts demonstrating that the parties acted in concert to state a claim for conspiracy).

Plaintiff "offers not a single fact to corroborate [his] allegation of a 'meeting of the minds' among the conspirators." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).  Rather, Plaintiff relies entirely on conclusory allegations including that he "wrote to every one of the defendants and demonstrated the existence of a significant nexus or entanglement between the defendants in relation to the steps taken by to fulfill the objects of the conspiracy and cover-up by Defendant Pamela Sgroi and other employee's Defendant Peekskill Police Department."  (Compl. ¶ 7.) Plaintiff also alleges that that "Defendant's County of Westchester; City of Peekskill; Peekskill

Police Department; Chief of Police Johansen; Sean A. Echols (Administrative Officer); Pamela Sgroi (Property Officer); Jane or John Doe (Records Access Officer); [Sergeant] Henderlong and Officer Vazeo . . . committed a civil conspiracy in combination of two or more persons acting in concert or a meeting of the minds to commit an unlawful act by unlawful means, where they agreed to inflict injury upon Plaintiff Tyrone Farmer, and where there was an overt act resulting damage." (Compl. ¶ 63.)   Similarly, Plaintiff alleges that "all of the defendant's named above knew or reasonably had known knew the exact details of the plan or the participants, and the defendant's (all) shared the same conspiratorial objective" and "all of the named Defendant's had a meeting of the minds and thus reached an understanding to bring about the conspiracy's objectives" (Compl ¶¶ 64-65.)   Such allegations, without more, are insufficient to survive a motion to dismiss. *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (finding dismissal under Rule 12(b)(6) proper where "plaintiff [did] not allege[ ], except in the most conclusory fashion, that any [ ] meeting of the minds occurred among any or all of the defendants"); *Ali*, 2018 WL 1353210, at *6 (same).

Accordingly, Plaintiff's conspiracy claims are dismissed as against Westchester County. To the extent that Plaintiff may, in good faith, allege more specific facts regarding the "meeting of the minds" between any of Westchester County and other Defendants, Plaintiff is granted leave to replead his claim.

## IV.      Plaintiff's Unauthorized Requests in Opposition Papers

Plaintiff's 61-page opposition papers exceed this Court's local rules regarding the submission of motion papers and are replete with arguments that are not related to Westchester County's motion.   Although many of these issues are not properly before the Court as they are unauthorized, the Court discusses these matters briefly below with the hopes that it will assist Plaintiff in appropriately advancing his interests in this matter moving forward.

22

*First*, Plaintiff discusses the validity of his underlying criminal prosecution and asserts that a confession that he made and which was submitted into evidence in his underlying trial was involuntarily obtained. On the basis of this involuntary confession, Plaintiff requests that "this whole case [*i.e.*, his underlying criminal conviction] should be dismissed in its entirety." (Pl's Opp. at 16.) To the extent he seeks invalidation of a criminal conviction, the proper vehicle for that relief is a habeas corpus action rather than a Section 1983 action, such as the one he has brought here. The Court understands that Plaintiff has brought a habeas corpus claim and that it is pending in the matter captioned *Farmer v. Colvin*, Dkt. No. 17-cv-00191. In this case, he may seek damages to the extent it does not demonstrate the invalidity of his underlying conviction.

*Second*, Plaintiff argues that the Court should give an unspecified adverse inference instruction to future jurors as a result of the loss or destruction of his cell phone. (Pl's Opp. at 19-21.) As this Court indicated in its Order to Amend, this request is premature and cannot be granted at this stage. The request for the Court to instruct a jury in an adverse inference remains wildly premature at this stage and is not relevant to the instant motion filed by Westchester County. His request is denied as premature, and he is given leave to seek this remedy at a later stage in this litigation.

*Third*, Plaintiff seeks a default judgment "due to plaintiff have in fact establishes the defendant's liability. For the plaintiff allegations have demonstrated that such actions taken by defendant's liability is inescapable." (Pl's Opp. at 24.) It is not clear that Plaintiff intends to invoke default judgment based on his characterization of the basis for which he seeks that remedy. In any event, the Court has already denied Plaintiff's virtually identical request for default judgment and nothing has transpired since that denial which would change this Court's assessments of the merits of such a request. (ECF No. 76 at 3-4.) For the same reasons articulated

23

in the Court's Order dated May 31, 2020, Plaintiff's renewed request for default judgment is denied.

Fourth, Plaintiff contends that he is entitled to summary judgment. The Court did not authorize Plaintiff to seek summary judgment, and would have denied his request to file a motion for summary judgment at this stage of the litigation because it is premature. In fact, the Court has already previously denied Plaintiff's request for summary judgment as premature as discovery has not yet been completed. (ECF No. 76 at 3-4.) Plaintiff's request for summary judgment remains premature as discovery has not commenced with respect to Westchester County and, accordingly, the request is denied as premature. He may seek leave to file a motion for summary judgment after discovery has been completed. Separately, the Court notes that, in light of its finding that Plaintiff has failed to plausibly allege any claims against Westchester County, his request for summary judgment as against Westchester County would inevitably be denied on the more demanding Rule 56 standard.

## V.      Leave to Amend

Generally, pro se plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice. *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, No. 12-CV-0053, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Though this Court has already afforded Plaintiff an opportunity to amend his complaint, the Court will grant Plaintiff one further bite at the apple. As Plaintiff failed to heed this Court's previous guidance, the Court repeats and emphasizes that, to the extent that Plaintiff

elects to file a Second Amended Complaint he should bear in mind that the Second Amended Complaint will replace not supplement his previous complaint so any claims, facts, or attachments that Plaintiff wishes the Court to consider going forward must be within or attached to the Second Amended Complaint.  This means that the Complaint and Amended Complaint will no longer be the operative documents containing his pleadings – everything that is essential must be contained in or attached to the Second Amended Complaint.

Separately, the Court advises Plaintiff that he should strive towards producing an accessible, concise, and simple statement of his claims.  His previous efforts to date have been excessively verbose, disorganized, and packed with dense prose.  Recognizing the apparent challenges Plaintiff has faced articulating a simple, clear, and comprehensive account of his claims, the Court has afforded Plaintiff a longer than usual deadline (60 days) to file his Second Amended Complaint.  Separately, the Court did not weigh in on the merits of his claims against other Defendants besides Westchester County, but Plaintiff may also use this opportunity to clarify what each of the Defendants engaged in that allegedly gave rise to liability.

## CONCLUSION

For the foregoing reasons, Westchester County's motion to dismiss is GRANTED. Plaintiff's claims against Westchester County are dismissed without prejudice and Plaintiff is granted leave to replead.  Plaintiff may file a Second Amended Complaint consistent with this Opinion on or before November 15, 2021.  An Amended Civil Rights Complaint form is attached to this Order.  Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice.

The Clerk of the Court is respectfully directed to terminate Westchester County's Motion to Dismiss at ECF No. 90.  The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and show proof of service on the docket.

Dated: September 15, 2021                    SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

_____CV_____
(Include case number if one has been
assigned)

**SECOND
AMENDED
COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
               (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                          (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

## A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name                    Middle Initial          Last Name

_____

Street Address

_____

County, City                              State                  Zip Code

_____

Telephone Number                          Email Address (if available)

**B.   Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: _____

First Name                        Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                    Zip Code

Defendant 2: _____

First Name                        Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                    Zip Code

Defendant 3: _____

First Name                        Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                    Zip Code

Defendant 4:

_____

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                    State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

| |
|---|
| Street Address |

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

 If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.